UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA ex rel. AVA
DOCK, PATRICIA MONKS, PATRICK
CAMPION, CAROL MOUSSEAU and JAMES
RYAN,

           Plaintiffs,

           -against-

RESEARCH FOUNDATION OF THE STATE
UNIVERSITY OF NEW YORK,

           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FILED UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(B)(2)

DO NOT ENTER ON PACER

1:10 -CV- 0385  GLS/DRH

COMPLAINT

JURY TRIAL DEMANDED

U.S. DISTRICT COURT
N.D. OF N.Y.
ORIGINAL FILED
APR 01 2010
LAWRENCE K. BAERMAN, CLERK
ALBANY

      Plaintiffs, Ava Dock ("Ms. Dock"), Patricia Monks ("Ms. Monks"), Patrick Campion ("Mr. Campion"), Carol Mousseau ("Ms. Mousseau") and James Ryan ("Mr. Ryan") (collectively, "Relators"), by and through their attorneys, Stockli Greene Slevin & Peters, LLP, and the Law Offices of Dennis B. Schlenker, submit the following as and for their Complaint on behalf of the United States of America against the Defendant, Research Foundation of the State University of New York ("RF"), in the above-captioned matter.

### PRELIMINARY STATEMENT

    1.    This is a *qui tam* action pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* Relators are all former employees of Center for Development of Human Services ("CDHS") who have uncovered RF's submission of false claims to the federal government with regard to an ongoing audit of the Medicaid program, in conspiracy with certain officials at the New York State Department of Health ("NYSDOH"). Each of the Relators is an

-1-

"original source" of the information alleged herein. This Medicaid fraud is the subject of an ongoing federal criminal investigation, and all of the Relators are witnesses for the federal government in this investigation. The Relators have provided the federal government with documentary and other evidence of a pervasive and unlawful conspiracy between and among RF and NYSDOH to defraud the federal government with regard to approximately $22,000,000,000 in annual matching funds which the federal government provides to New York for the Medicaid program. Relators seek to recover these funds from RF on behalf of the United States of America.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the instant matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because RF maintains a principal place of business in this District, and because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this District. Venue is also proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendant filed the false statements at issue within this judicial district.

## PARTIES

4. Ms. Dock is a citizen of the State of New York, residing in the County of Albany, New York. From September 4, 2007 to December 2009, Ms. Dock was an employee of RF.

5. Ms. Monks is a citizen of the State of New York, residing in the County of Greene, New York. From July 2007 to April 2008, Ms. Monks was an employee of RF.

6. Mr. Campion is a citizen of the State of New York, residing in the County of Albany, New York. From July 2007 to April 2008, Mr. Campion was an employee of RF.

7. Ms. Mousseau is a citizen of the State of Washington, residing in the County of Whatcom, Washington. From August 2007 to December 2008, Ms. Mousseau was an employee of RF.

8. Mr. Ryan is a citizen of the State of New York, residing in the County of Columbia, New York. From January 2008 to June 2008, Mr. Ryan was an employee of RF.

9. Upon information and belief, Defendant RF is a private, nonprofit educational corporation organized and existing under the laws of the State of New York, with a principal place of business at 35 State Street, Albany, New York.

## GENERAL ALLEGATIONS

10. This action is not based upon any public disclosure of information within the meaning of 31 U.S.C. § 3730(e)(4)(A). Each of the Relators has direct and independent knowledge of the information upon which this Complaint is based within the meaning of 31 U.S.C. 3730(e)(4)(B), derived through their employment by RF and interactions with representatives of NYSDOH. The Relators have voluntarily provided this information to the Government prior to filing this Complaint. To the extent that any of these allegations may have been publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A), the Relators were the original source of the disclosures.

11. This lawsuit arises out of RF's submission of false claims with regard to the Congressionally-mandated audits of NYSDOH's implementation of the federal Medicaid and

State Children's Health Insurance Program ("S-CHIP") programs (hereinafter collectively referred to as "Medicaid"). These audits – known as the Payment Error Rate Measurement ("PERM") and/or Medicaid Eligibility Quality Control ("MEQC") programs (the "PERM/MEQC Project") – are two separate audit programs designed to measure New York State's implementation of payments in the Medicaid program. Both PERM and MEQC are conducted by RF under contract with NYSDOH.

12. PERM is required in order to comply with the Improper Payments Information Act of 2002 (IPIA), Public Law 107-300, enacted on November 26, 2002, which requires the heads of Federal agencies to review programs that are susceptible to significant erroneous payments to estimate the amount of improper payments, reporting those estimates to the Congress, and submitting a report on actions the agency is taking to reduce erroneous expenditures.

13. MEQC is the audit component of the New York State Medicaid Section 1115 demonstration, the Partnership Plan (11-W-00114/2), as approved by the United States Department of Health & Human Services in accordance with Section 1115(f) of the Social Security Act, 42 U.S.C. § 1314.

14. Under federal law, New York State can be penalized for excessive error rates in the authorization of Medicaid payments through the disallowance of all or part of the approximately $22 billion in federal matching funds for Medicaid which New York receives each year.

15. RF has a contract with the NYSDOH to conduct the PERM and/or MEQC audits on behalf of NYSDOH.

16. RF, in conspiracy with certain officials at NYSDOH, has knowingly, intentionally and willfully submitted false statements to the federal government for the purpose of obtaining federal funds to which the NYSDOH was not entitled.

## FRAUD UPON THE FEDERAL GOVERNMENT THROUGH THE PERM/MEQC PROJECT

17. Both the PERM and the MEQC audits are Congressionally mandated for the purpose of assuring the proper management of high cost federally mandated and funded programs, such as the federal Medicaid program.

18. NYSDOH is legally obligated to implement PERM and MEQC as a condition of receiving federal Medicaid matching funds.

19. NYSDOH has elected to use a private contractor to implement PERM and MEQC.

20. The Center for Development of Human Services, which is part of RF, was the private contractor selected by NYSDOH to implement PERM and to conduct targeted MEQC audits of the Medicaid program.

21. PERM audits are required to be based upon a random sample of cases.

22. At all times relevant hereto, NYSDOH used computer "field" edits to screen cases for inclusion in the PERM/MEQC audit.

23. The computer field edits utilized by NYSDOH and RF were inaccurate and routinely included cases that did not belong in the PERM audit (such as Supplemental Security Income cases).

24. As a result, NYSDOH's and RF's random sample for the PERM audit is, and has been, defective throughout the history of the PERM program.

25. From the start of the MEQC/PERM Project, NYSDOH, with the knowing assistance of RF personnel, attempted to influence and/or alter the audit results that would be reported to the federal government by RF.

26. Among other things, NYSDOH attempted to restrict and control certain RF auditors' access to information relating to the files being audited.

27. NYSDOH did this by altering the "random" sample provided to RF's auditors.

28. NYSDOH instructed RF, and RF supervisors agreed, to substitute eligible cases for ineligible cases.

29. NYSDOH instructed RF, and RF supervisors agreed, to submit its preliminary audit results to NYSDOH for its own review prior to submission to the federal government.

30. NYSDOH instructed RF that it wanted NYSDOH employees to review and comment upon RF's eligibility determinations.

31. In April of 2008, Ms. Monks and Mr. Campion confronted the NYSDOH officials overseeing the PERM / MEQC program about NYSDOH's unlawful interference with the audits.

32. In retaliation, NYSDOH conspired with RF to have RF fire Ms. Monks and Mr. Campion.

33. RF terminated Ms. Monks and Mr. Campion on April 11, 2008.

34. RF intentionally replaced Ms. Monks and Mr. Campion with a supervisor ("Supervisor A") who, upon information and belief, agreed to alter the audit results to meet the demands of NYSDOH.

35. Upon information and belief, notwithstanding the efforts by NYSDOH to influence the audit results, RF was still identifying an error rate of at least twenty to twenty-five percent for the Medicaid cases under PERM review, and an error rate of at least twelve percent for cases under MEQC review.

36. This error rate was significantly higher than the three percent error rate which was allowed under the federal Medicaid program.

37. When NYSDOH was confronted with the preliminary results demonstrating the excessive error rates, NYSDOH and RF began to take additional steps to falsely reduce the reported rate.

38. NYSDOH and RF began actively replacing case files in an effort to reduce the reported error rate.

39. Upon information and belief, NYSDOH directed Ms. Dock to alter the forms used by the RF auditors.

40. As a programmer/analyst, Ms. Dock was the RF employee responsible for creating and maintaining the databases that would be audited by CMS.

41. Ms. Dock had created the databases at issue in a manner designed to ensure the integrity of the information that had been entered by the PERM/ MEQC Project auditors (the "Auditors").

42. The Auditors were also employees of RF.

43. One of the measures that Ms. Dock took to ensure the integrity of the information in the PERM/MEQC Project databases was to restrict the ability of RF employees to alter data which had been input by the Auditors.

44. RF submits its results from the PERM Project via the PERM Eligibility Tracking Tool ("PETT"). PETT is a website via which states may submit their PERM reporting forms to the federal government.

45. Only two staff members from each State are permitted to register for the PETT website and have access to upload or input data.

46. Ms. Dock was at all relevant times one of the two RF employees designated to have access to upload or input data to the PETT site on behalf of the State of New York.

47. Supervisor A was the other RF employee designated to have access to the PETT site on behalf of the State of New York.

48. Although the instructions associated with the PETT site instruct users to maintain the secrecy of their passwords, Supervisor A regularly shared her password with other RF employees.

49. Although the instructions associated with the PETT site instruct users to maintain the secrecy of their passwords, Supervisor A directed Ms. Dock to share Ms. Dock's password with other RF employees.

50. Upon information and belief, in October 2008, RF learned that the Center for Medicaid Services ("CMS") would be conducting an audit of the PERM/MEQC Project.

51. Upon information and belief, the decision by CMS to audit was undertaken at or near the time that the Office of the Inspector General of the U.S. Department of Health and Human Services ("OIG") decided to open an investigation of the PERM/MEQC Project. The OIG investigation had been triggered by a letter to CMS by Ms. Monks, as well as a subsequent letter in January, containing information discussed and shared by all five Relators. These letters reported the ongoing fraud by NYSDOH and RF.

52. In a meeting that occurred in November 2008, Ms. Dock was instructed by her supervisors to delete certain data fields from the PERM Project databases. RF also directed Ms. Dock to create a separate database that, upon information and belief, would be produced to the auditors from CMS and/or OIG if they should request to see RF's data.

53. Supervisor A was one of the supervisors who provided this instruction to Ms. Dock.

54. Upon information and belief, the purpose for the deletion of these data fields was to alter the information that would be provided to the OIG auditors, and to alter the case files presented for this audit.

55. Upon information and belief, Ms. Dock's supervisors at RF intended to under-report New York State's Medicaid error rate so that New York would continue to receive federal matching funds for the Medicaid program.

56. Upon information and belief, RF's actions in under-reporting the New York State Medicaid error rate constituted the knowing submission of a false claim to the federal

government for payment or approval within the meaning of 31 U.S.C § 3729(a)(1)(A), and a conspiracy with NYSDOH to do so within the meaning of 31 U.S.C. §3729(a)(1)(C).

57.     As part of its submission of a false claim to the federal government, RF prepared a second set of PERM/MEQC Program audit documents for submission to the federal government. That second set of audit documents, which deleted data fields and replaced case files, falsely under-reported the error rate for New York's implementation of the Medicaid program.

58.     While New York's error rate was actually in excess of twenty (20) percent for cases under PERM review and in excess of twelve (12) percent for cases under MEQC review, RF submitted documents to the federal government that purported to show that New York's error rate was at or close to the maximum permitted error rate of three percent (3%).

59.     Upon information and belief, RF's purpose in attempting to under-report New York's error rate for Medicaid claims was to defraud the federal government with regard to the PERM/MEQC Project, in order to avoid the disallowance of federal matching funds for Medicaid to New York.

60.     RF's conduct in regard to the submission of false claims for payment or approval to the federal government was knowing and material within the meaning of 31 U.S.C. § 3729(b).

61.     On or about June 24, 2009, Ms. Dock was directed by a supervisor at RF, Supervisor B, to lift the security on the MEQC Project database. This security had been designed to prevent anyone from altering data other than the person who had input it.

62. On or about June 24, 2009, Ms. Dock lifted the auditor specific security on the MEQC Project database. This allowed the RF supervisors to alter and/or delete the data and specific findings which had been entered by the Auditors with regard to the MEQC Project.

63. On or about July 1, 2009, Ms. Dock met with the supervising auditor for the MEQC Project, Supervisor C, who directed her to lift the auditor specific security on a second MEQC Project database. This allowed the RF supervisors to alter and/or delete the data and specific findings which had been input by the Auditors with regard to the MEQC Project.

64. Upon information and belief, the purpose for requiring Ms. Dock to lift the audit specific security was to make it appear as though the Auditor who had originally input the data was making the changes when, in fact, it was RF supervisors that were altering the case data.

65. Ms. Dock's supervisors directed her to lift this security even though they knew that there was an ongoing federal audit of the PERM/MEQC Project.

66. On July 1, 2009, Ms. Dock informed Supervisor B of Supervisor C's instructions. Ms. Dock also informed Supervisor B that "I think it is important to state that in this manner the change is recorded as the actual auditor making the change, not the supervisor."

67. Upon information and belief, RF's directed Ms. Dock to lift security on the PERM/MEQC Database so that it could submit a false claim to the federal government for payment or approval within the meaning of 31 U.S.C § 3729(a)(1)(A), and RF did so as part of a conspiracy with NYSDOH to do so within the meaning of 31 U.S.C. §3729(a)(1)(C).

### First Cause of Action – False Claims Act (31 U.S.C. § 3729)

68. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

-11-

69. This is a *qui tam* civil action brought by Relators and the government of the United States to recover treble damages and civil penalties under 31 U.S.C. § 3729(a)(1) and (2) of the False Claims Act.

70. Defendant has violated 31 U.S.C. § 3729(a)(1) and (2) of the False Claims Act in that they have "knowingly present[ed], or causes to be presented, a false or fraudulent claim for payment or approval; [or] knowingly [made], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim" to the United States Government.

71. In reliance on these false claims, the United States Government, by and through the United States Department of Health and Human Services, has made annual payments to the State of New York of approximately $22,000,000,000.00, and the United States Government has been damaged in an amount of at least $22,000,000,000.00, exclusive of interest, multiple damages, fees, costs and expenses, as a result of Defendant's conduct.

72. Relators are private persons with direct and independent knowledge of the allegations of this complaint who have brought this action pursuant to 31 U.S.C. § 3730(b) on behalf of themselves and the United States Government.

73. By virtue of the foregoing, Defendants have knowingly violated 31 U.S.C. § 3729 and have thereby damaged the United States Government in an amount to be determined at trial.

### Second Cause of Action – False Claims Act Conspiracy (31 U.S.C. § 3729)

74. Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

75. This is a *qui tam* civil action brought by Relators and the government of the United States to recover treble damages and civil penalties under 31 U.S.C. § 3729(a)(3) of the False Claims Act.

76. Defendant has violated 31 U.S.C. § 3729(a)(3) of the False Claims Act in that it did willfully and intentionally conspire among and in concert with other conspirators yet unnamed for the purpose of defrauding the United States Government by getting a false or fraudulent claim allowed or paid and they did, on multiple occasions between September 1, 2007 and September 30, 2009, engage in overt acts in furtherance of that conspiracy.

77. As a result of such conspiracy, the United States Government, by and through the United States Department of Health and Human Services, has made annual payments to the State of New York of approximately $22,000,000,000.00, and the United States Government has been damaged in an amount of at least $22,000,000,000.00, exclusive of interest, multiple damages, fees, costs and expenses, as a result of Defendant's conduct.

78. Relators are private persons with direct and independent knowledge of the allegations of this complaint who have brought this action pursuant to 31 U.S.C. § 3730(b) on behalf of themselves and the United States Government.

79. By virtue of the foregoing, Defendants have knowingly violated 31 U.S.C. § 3729 and have thereby damaged the United States Government in an amount to be determined at trial.

WHEREFORE, Relators respectfully request this Court to award the following damages to the parties and against the Defendant on Relators' First and Second Causes of Action as follows:

To the UNITED STATES GOVERNMENT:

(a) three times the amount of actual damages the United States Government has sustained as a result of the fraudulent conduct of the Defendant;

(b) a civil penalty of not less than $5,000 and not more than $10,000 for each false claim which the Defendant submitted to the United States Government;

(c) prejudgment interest; and

(d) all costs of this action.

To the RELATORS:

(a) 30% of the proceeds of this action, pursuant to 31 U.S.C. § 3730(d);

(b) reimbursement of Relators' expennse in connection with this action;

(c) award of reasonable attorneys' fees;

(d) costs and disbursements of this action; and

(e) such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs seek a trial by jury on all issues so triable.

Date: April 1, 2010
Albany, New York

STOCKLI GREENE SLEVIN & PETERS, LLP

By: _____
Donald T. Kinsella (Bar Roll No. 103149)
John D. Hoggan, Jr. (Bar Roll No. 511254)
*Attorneys for Plaintiffs*
90 State Street
Albany, New York 12207
(518) 449-3125

-and-

LAW OFFICE OF DENNIS B. SCHLENKER

By:   s/ Dennis B. Schlenker
      Dennis B. Schlenker (Bar Roll No. 102545)
      *Attorneys for Plaintiffs*
      174 Washington Avenue
      Albany, New York 12210
      (518) 463-4473